## APPEAL OF S. W. HARRIS.

Docket No. 1651.    Submitted May 11, 1925.    Decided October 20, 1925.

Profits credited to the taxpayer on the books of Braun & Glazebrook are taxable to him for the years in which so credited, his books being kept on the accrual basis.

*M. Carter Hall, Esq.*, for the taxpayer.
*B. G. Simpich, Esq.*, for the Commissioner.

Before IVINS,[1] MORRIS, and LOVE.

This appeal is from determinations of deficiencies in income taxes of $1,952.49 for 1916 and $98,163.94 for 1919, overassessments having been found for 1917 of $7,582.39, for 1918 of $12,613.94, and for 1920 of $10,579.14, making a net deficiency of $69,341.55. At the hearing the taxpayer conceded the correctness of the Commissioner's determination with respect to the years 1916, 1917, and the fiscal period of eight months ending August 31, 1918. He further conceded additional taxes for 1919 of $25,034.23, and for 1920 of $31,514.02. The Commissioner's determination shows a net additional tax for those two years of $87,584.80, leaving in controversy, therefore, only the difference between that amount and $56,548.25, or $31,036.55. The question involved is whether certain profits credited to the taxpayer's account on the books of Braun & Glazebrook are taxable to him for the year in which so credited, or for the year in which received. From the pleadings and oral and documentary evidence presented at the hearing, the Board makes the following

FINDINGS OF FACT.

From January 1, 1916, to August 31, 1923, the taxpayer was a subject of the Kingdom of Great Britain and a resident of Norfolk,

---

[1] This decision was prepared during Mr. Ivins's term of office.

Va. During that period he was engaged in carrying on a domestic and export business in cotton, with his principal office at Norfolk, trading and doing business under the firm name of S. W. Harris & Co., being the sole owner and proprietor of said business. He has consistently kept the books of the business of S. W. Harris & Co. upon the fiscal year basis ending August 31.

During the taxable periods in question he had an arrangement with the firm of Braun & Glazebrook, Liverpool, England, under which he purchased cotton in this country and shipped it to them at cost with draft attached. They would dispose of the cotton so shipped and the profits and losses would be credited or debited to the taxpayer on an agreed percentage basis which, up to July 1, 1918, was 50 per cent, and thereafter, up to and including July 31, 1920, 40 per cent. The books of account of Braun & Glazebrook were closed July 31 of each year and statements of the condition of the account made up and sent to the taxpayer. Credits to the taxpayer were as follows:

| | | |
|---|---|---|
| July 31, 1917 | £933 6s. 2d. | $4,437.88 |
| Jan. 31, 1918 | £15,483 4s. 8d. | 73,591.81 |
| July 31, 1919 | £33,840 9s. 3d. | 147,544.42 |
| July 31, 1920 | £9,918 3s. 5d. | 37,007.18 |

The taxpayer's withdrawals in cash from said account between August 31, 1918, and August 31, 1920, were, September 23, 1918, £10,000; August 5, 1920, £25,000. The statements of account as rendered by Braun & Glazebrook were not received by the taxpayer until after July 31 of each year and in no year prior to August 31. Since August 31, 1918, the taxpayer has made no entries on his books with respect to his profits on the English sales until he had actually received the proceeds of the drafts in the United States.

In 1914 the taxpayer entered into an agreement with the English firm, under which he was not to draw any draft on them for his profits without their permission having first been given. Under this agreement, beginning in the fall of 1918, he was required to maintain with them a substantial balance of about £15,000 for the purpose of taking care of possible losses on future contracts for the sale of cotton, for the financing of sales in England, and for the payment of such British income and profits taxes as were claimed to be due from him. In 1919 the English firm refused to permit him to draw any draft against his balance pending the settlement of the English taxes.

The books of the taxpayer were regularly kept on the accrual basis.

Braun & Glazebrook had no control over the amount or kind of cotton to be purchased by the taxpayer and, after cotton had been purchased by him and shipped to them, he had no control over the

price at which it should be sold and he did not know the price at which it was sold. He had no authority to borrow money with which to buy cotton and bind the English firm, nor did they have the power to borrow money to finance sales in England and bind him. The English firm had no interest in the purchases of cotton until after it had been consigned and shipped and bill of lading issued and draft paid. The taxpayer was not authorized to sign or endorse the name of Braun & Glazebrook, nor were they authorized to sign or endorse his name to commercial paper. No joint bank account was maintained and neither could draw upon any bank account of the other. The taxpayer furnished the capital with which to buy the cotton in the United States.

The taxpayer included in his returns for the fiscal years 1919 and 1920 the profits on English sales which were actually received by him during those years, while the Commissioner included in his taxable income the profits which were credited to him on the books of Braun & Glazebrook and appeared on the statements of account made by them as of July 31 of each year. The deficiency letter of November 26, 1924, sets forth overassessments of $32,342.48 and $1,452.52 for the years 1917 and 1919, respectively. This determination is the result of an appeal from an audit of the taxpayer's returns made in connection with a report of the revenue agent in charge at Richmond, Va., dated January 16, 1923, showing additional taxes of $24,760.09 for 1917 and $99,616.46 for 1919, which were assessed in June, 1923.

### DECISION.

The determinations of the Commissioner are approved.

### OPINION.

MORRIS: The Commissioner entered a special plea and alleged therein that no deficiency was asserted for the calendar year 1917 and for the fiscal year 1919, but that overassessments had been found and for that reason the Board is without jurisdiction to consider the matters affecting the tax liability for those years. The taxpayer conceded the 1917 adjustment, so it is unnecessary to consider the plea as to that year. The contention of the Commissioner as to 1919 is fully answered in prior decisions. *Appeal of Joseph Garneau Co.*, 1 B. T. A. 75; *Appeal of Ormsby McKnight Mitchel*, 1 B. T. A. 143; *Appeal of E. J. Barry*, 1 B. T. A. 156; *Appeal of Hickory Spinning Co.*, 1 B. T. A. 409.

In view of the concessions of the taxpayer the issues are narrowed down to the proper tax liability for the years 1919 and 1920. The Commissioner's answer denies the taxpayer's allegation that the joint account between the taxpayer and Braun & Glazebrook was not

a partnership, but his representative did not argue that question at the hearing. It is clear in our minds that this joint account did not constitute a partnership, and that section 218 (a) of the Revenue Act of 1918 is therefore not applicable.

The taxpayer contends that the profits credited to his account on the books of Braun & Glazebrook as of July 31 of each year were neither actually nor constructively received by him. As the taxpayer's books were kept on the accrual basis, that argument is specifically answered in the *Appeal of Clarence Schock*, 1 B. T. A. 528, in which we held that under the accrual system of accounting, receipt of income, actual or constructive, is not essential to constitute it income within the statutory definition thereof.

The taxpayer further argues that under the accrual system items should not be considered as accrued when they are unliquidated or the liability of the obligor is uncertain or contingent and not fixed and determined. He does not question the correctness of accruing the profits credited to his account prior to 1919, although the only distinguishable facts are that for 1919 and 1920 he kept a cash balance in England for the purpose of taking care of possible losses on future contracts for the sale of cotton, for the financing of sales in England, and to meet a contingent tax liability. We can not see how these facts make such profits unliquidated or contingent. Under the Revenue Acts income is computed on an annual basis. The income involved in this appeal is not contingent although subject to being wiped out by subsequent losses or expenses if left in the business.

We are of the opinion that the principles underlying this appeal were decided in the *Appeal of Clarence Schock*, *supra*, and that, therefore, the taxpayer must accrue and report in his returns for the taxable years 1919 and 1920 those profits which were earned and credited to his account on the books of Braun & Glazebrook during said years.